869 So.2d 646 (2004)
Reynard Antoine GASKIN, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-206.
District Court of Appeal of Florida, Third District.
March 31, 2004.
Bennett H. Brummer, Public Defender and Robert Godfrey, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General and Fredericka Sands, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and GREEN, J., and BARKDULL, THOMAS H., JR., Senior Judge.
SCHWARTZ, Chief Judge.
As he was being brought from the adjacent jail to court on a pending felony charge against him, Gaskin broke loose from the correction officers and ran out of the Metro Justice Building. With several officers chasing him, he broke into a business located a few blocks from the courthouse. He pushed his way inside and locked himself in. He was soon followed by the officers who, after a brief scuffle, reapprehended him. As a result of these events, Gaskin was convicted of several offenses (including escape), which he does not challenge, and burglary, which he does.
In the sole issue presented on appeal, he contends that the trial court committed fundamental error (there was no objection below) in instructing the jury that it could find him guilty of burglary, in *647 accordance with the information, by "entering or remaining in [the business] ... [with] a fully formed conscious intent to commit the offense of escape and/or resisting arrest without violence [therein]." He argues that a possible basis of the burglary conviction, guilt of the crime of breaking and entering with intent to commit the crime of escape simply does not exist on these facts.[1] We agree. Because the general verdict of guilty of burglary makes it impossible to determine that it was not based on that ground, see Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds by Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); United States v. Garcia, 992 F.2d 409 (2d Cir.1993); Lyons v. State, 791 So.2d 36 (Fla. 2d DCA 2001), review denied, 831 So.2d 673 (Fla.2002); Mosely v. State, 682 So.2d 605 (Fla. 1st DCA 1996); Torna v. State, 742 So.2d 366 (Fla. 3d DCA 1999), see also Cardenas v. State, 867 So.2d 384 (Fla.2004), we therefore reverse the burglary conviction and sentence.
Under the law of Florida, it is clear that the crime of escape was (a) completed when Gaskin first broke away from the officers and (b) did not continue thereafter.[2] See § 944.40, Fla. Stat. (1997); Watford v. State, 353 So.2d 1263, 1265 (Fla. 1st DCA 1978)("when the State has established its right to legal custody and the conscious and intentional act of defendant of leaving the established area of such custody, the offence of escape is prima facie established"). Accord Maynard v. State, 652 P.2d 489, 492 (Alaska Ct.App. 1982)("The offense of escape is complete when a person once in lawful custody, voluntarily removes himself from that custody without lawful authority."); People v. George, 109 Cal.App.3d 814, 819, 167 Cal. Rptr. 603, 605 (1980)("The crime [of escape] is completed when the prisoner wilfully leaves the prison camp, without authorization."); State v. Davis, 14 Nev. 439 (1880)(instruction that person confined by sheriff in jail who escapes or departs therefrom without authority is guilty of escape approved "because the doing of those acts completed the crime"); State v. Fore, 185 Or.App. 712, 718, 62 P.3d 400, 404 (2003)("escape is completed when a defendant sets out on a course of action that results, even momentarily, in the defendant no longer being in custody"); Fitzgerald v. State, 782 S.W.2d 876, 881 (Tex. Crim.App.1990)("flight is not an essential element of the offense of escape because the offense itself is complete when an unauthorized departure from custody is made"); see State ex. rel Farrior v. Faulk, 102 Fla. 886, 136 So. 601, 603 (1931)("when once the prisoner has succeeded in getting beyond the custody of and out of sight of the custodian, the escape is complete"); Ayendes v. State, 385 So.2d 698, 699 (Fla. 1st DCA 1980)(the offense of escape is "completed upon an inmate's intentional act of leaving the established area of custody"), pet. for review denied, 392 So.2d 1371 (Fla.1980). Contra United States v. Bailey, *648 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)(federal crime of escape is continuing offense).[3]
It follows as a matter of legal logic that the defendant could not have afterwards "intended" to commit an "escape" within the allegedly burglarized building. In essence, then, the charged offense was legally impossible to commit. On indistinguishable facts, the Court of Criminal Appeals of Texas has reached just this conclusion:
The Court of Appeals further concluded that since the offense of escape was complete before appellant entered the apartment, he could not as a matter of law, have "intended" to commit the offense of escape when he entered the apartment. They reasoned that appellant "may have entered the apartment with the intent to resist or evade arrest,... but the evidence is conclusive that he did not commit the offense of burglary with intent to commit felony escape, because he had already completed the offense of escape." The State argues that the defense of impossibility does not apply to the intended offense in a burglary. They reason that the gist of the offense is intent and so long as intent is present at the time of the entry, the offense is complete regardless of whether the intended offense could have been executed.
In concluding that impossibility does not apply to the intended offense of burglary, the State fails to distinguish between legal and factual impossibility.
* * *
Legal impossibility has been described as existing where the act if completed would not be a crime, although what the actor intends to accomplish would be a crime.
* * *
One commentator has explained the distinction between legal impossibility and factual impossibility:
(1) unless the intended end is a legally proscribed harm, causing it is not criminal, hence any conduct falling short of that is not a criminal attempt (i.e. the principle of legality); and (2) if the intended end is a legally proscribed harm, the failure to effect it because of the lack of a factual condition necessary to its occurrence, is not defense (i.e. factual impossibility).
JEROME HALL, GENERAL PRINCIPLES OF CRIMINAL LAW 586 (2nd ed.1960). Whatever it is that the actor intends to do is simply not a crime, although he may believe it is.[FN6]
FN6. The following hypothetical is also illustrative:
Lady Eldon intends to purchase French lace and smuggle it back into England without paying the customs duty.... The customs officer at Dover brings it to light. He then says to Lady Eldon: "Lucky for you you returned to England today rather than yesterday. I just received word this morning that the government has removed French lace from the duty list."
PAUL H. ROBINSON, 1 CRIMINAL LAW DEFENSES § 85(d), at 432 (1984).

*649 * * *
In concluding that "as a matter of law, [appellant] could not have "intended" to commit the offense of escape when he entered the apartment", the Court of Appeals applied the principle of legal impossibility. Having done everything appellant intended to do, the resulting end would still not be a crime, or at least the crime charged (burglary per unlawful entry into a habitation with intent to commit felony escape) because appellant had already left custody at the time he entered the apartment. Therefore, whatever it was appellant intended to do at the point of entering the apartment was simply not felony escape since he had already escaped previously.
One commentator explained why the case of Wilson discussed in footnote 6 herein, represented a legal impossibility:
In Wilson the defendant may have thought he was committing a crime, but if he did it was not because he intended to do something that the criminal law prohibited but rather because he was ignorant of the material alteration requirement of the crime of forgery.
WAYNE R. LAFAVE, AUSTIN W. SCOTT, 2 SUBSTANTIVE CRIMINAL LAW § 6.3, at 45 (1986). Likewise, here appellant may have thought he was committing escape, "but if he did it was not because he intended to do something that the criminal law prohibited but rather because he was ignorant of the" departure from custody requirement of the crime of escape. Accordingly, the Court of Appeals did not err in concluding that it was legally impossible for appellant to have intended to commit the underlying offense of felony escape.
Lawhorn v. State, 898 S.W.2d 886, 890-92 (Tex.Crim.App.1995) (citations omitted).
The validity of this holding is demonstrated by comparing it to State v. Wallace, 56 Conn.App. 730, 745 A.2d 216 (2000), cert. denied, 253 Conn. 901, 753 A.2d 939 (2000), which also dealt with a virtually identical situation but which upheld a burglary conviction. The distinction between Wallace, on the one hand, and Lawhorn, 898 S.W.2d at 886, and this case on the other, is that Wallace was charged with burglary of the structure in which he was attempting to elude apprehension with "intent to commit the offense of interfering with an officer" which, under Connecticut law, is
a crime, which, depending on the facts of the case, may be a continuing offense or may be an offense that is completed on the happening of one event. The actions of the defendant in this case lead to a conclusion that the evasion of the police was a continuing offense rather than numerous, separate offenses. This does not preclude, however, the continuous offense of interfering as being the predicate offense for numerous, separate burglary charges. The defendant's entering into a residence was a continuation of the offense of interfering with an officer that began when the defendant first ran from the police. While the intent to interfere may not be separately punishable each time the defendant unlawfully entered the residences, it does not alter the fact that when the defendant entered the residence, he was doing so with the intent to commit the crime of interfering with an officer. [e.s.]
Wallace, 56 Conn.App. at 736, 745 A.2d at 219; cf. also Bailey, 444 U.S. at 394, 100 S.Ct. 624. In this case, because the crime of escape was, as a matter of law, completed before he entered the building, the result must be otherwise. See generally W.R. LaFave, 3 Substantive Criminal Law § 21.1(e)(2d Ed.2003).
*650 Accordingly, while the convictions below are otherwise affirmed, the one for burglary is reversed and the cause is remanded for resentencing and for other proceedings consistent herewith.
Affirmed in part, reversed in part and remanded.
NOTES
[1] Our holding makes it unnecessary to consider the possibility that the other alternative basis for the burglary verdict, b. and e. "with [the] intent to commit the offense of ... resisting arrest without violence" is also legally inadequate in the light of the rule that a burglary is complete "the moment the defendant enters or remains within the [structure] with the requisite intent." State v. Stephens, 601 So.2d 1195, 1196 (Fla.1992). It is difficult to comprehend that Gaskin entered the building with the intent to later resist an arrest which he clearly wanted only to avoid entirely.
[2] Indeed, the escape charge of which Gaskin was convicted in this very case was that he had escaped from the "holding cell ... or detention area in the Miami-Dade Criminal Court."
[3] The state's reliance on Griffin v. State, 639 So.2d 966 (Fla.1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995), and Parker v. State, 570 So.2d 1048 (Fla. 1st DCA 1990), which deal with the issue of the scope of the felony murder doctrine, is misplaced. See also Ayendes, 385 So.2d at 699 (holding that confinement of victim during flight from custody "facilitate[d]" escape within meaning of kidnaping statute).