905 So.2d 271 (2005)
Jerry SANDERS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-229.
District Court of Appeal of Florida, Second District.
July 1, 2005.
*272 James Marion Moorman, Public Defender, and Sean K. Ahmed, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy A. Freeland, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
Jerry Sanders, Jr., raises three claims of error on appeal from his convictions and sentences for sexual battery, kidnapping, burglary with an assault or battery, and petit theft. Sanders' complaints about the jury instructions and his sentencing guidelines scoresheet were not preserved for review, and we affirm as to those issues without further discussion. However, we agree with Sanders' argument that the evidence was insufficient to prove he committed a kidnapping. Accordingly, we must reverse his conviction and sentence for that offense.
According to the State's evidence at trial, the victim awoke in the early morning hours of March 19, 2002, to find a masked man poking her arm. Over the next three hours, she talked with the man, attempting to deflect his request for oral sex. The man removed his mask during this time, thus permitting the victim to later identify Sanders as the intruder. Several times during the encounter, Sanders told the victim not to move. But he sometimes moved about the victim's small apartment, leaving her alone in the bedroom. He gave the victim a glass of milk when she asked for something to drink, and he retrieved her cigarettes and an ashtray from another room. Before waking the victim, Sanders had taken approximately $85 from her purse in the living room.
Eventually, when the victim told Sanders that he would have to kill her before she would perform oral sex, Sanders obtained a knife from the kitchen and threatened her with it. He then returned the knife, and the victim finally acquiesced. Afterwards, Sanders took a rag and *273 cleaned up. Unbeknown to him, however, the victim spat some of his semen onto the carpet. Sanders then allowed the victim to use the bathroom, and he closed the bathroom door behind her. When she emerged a few minutes later, Sanders was gone. In addition to the victim's testimony, the State produced a fingerprint from a sliding glass door that matched Sanders' fingerprints and DNA evidence from the victim's oral swabs and from the carpet that matched Sanders'.
Sanders was charged with sexual battery under section 794.011, Florida Statutes (2001), and the information alleged that Sanders used or threatened to use a deadly weapon (knife). Sanders was also charged with armed kidnapping to facilitate a felony, in violation of section 787.01, Florida Statutes (2001); burglary with an assault or battery while armed, in violation of section 810.02, Florida Statutes (2001); and attempted armed robbery with a deadly weapon, in violation of section 812.13, Florida Statutes (2001). After the State rested, the trial court granted the defense motion for a judgment of acquittal on the attempted armed robbery charge, which the court reduced to a charge of petit theft. The jury found Sanders guilty of the lesser included offense of sexual battery, kidnapping as charged but with a finding that Sanders did not use a weapon, burglary with an assault or battery but without a weapon, and petit theft. The trial court sentenced Sanders to concurrent terms of thirty years in prison for kidnapping, fifteen years for sexual battery and burglary, and sixty days in jail for petit theft.
Sanders argues that the trial court erred by denying his motion for judgment of acquittal on the kidnapping charge and that his kidnapping conviction is fundamental error. While a defendant must generally preserve his challenge to the sufficiency of the evidence by making a timely and specific objection in the trial court, lack of preservation is not a bar to relief "when the evidence is insufficient to show that a crime was committed at all. . . . `[A] conviction imposed upon a crime totally unsupported by evidence constitutes fundamental error.'" F.B. v. State, 852 So.2d 226, 230 (Fla.2003) (quoting in part Troedel v. State, 462 So.2d 392, 399 (Fla.1984)).
Under section 787.01(1)(a)(2), and pertinent to this case, kidnapping "means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her . . . will and without lawful authority, with intent to . . . [c]ommit or facilitate commission of any felony." The Florida Supreme Court has recognized that "[i]f construed literally this subsection would apply to any criminal transaction which inherently involves the unlawful confinement of another person, such as . . . sexual battery." Mobley v. State, 409 So.2d 1031, 1034 (Fla.1982). In Mobley the supreme court adopted the nationally prevalent view that the kidnapping statute does not apply to unlawful confinements or movements that are "incidental to other felonies." Id. Later, in Faison v. State, 426 So.2d 963, 966 (Fla.1983), the supreme court announced a multifaceted test for determining whether a particular confinement or movement during the commission of another crime constitutes kidnapping.
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier *274 of commission or substantially lessens the risk of detection.
Id. at 965 (quoting State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (1976)). In short, kidnapping with intent to commit a felony "does not include movement or confinement that is inconsequential or inherent in the nature of the felony." Id. at 966 (quoting with approval Harkins v. State, 380 So.2d 524, 528 (Fla. 5th DCA 1980)).
In this case the State argues that Sanders' kidnapping conviction was supported by the duration of the victim's confinement in her apartment. But it has been held that the duration of a confinement is not itself an integral part of the Faison test even though it may bear on whether the confinement was slight or inconsequential. Ferguson v. State, 533 So.2d 763, 764 (Fla.1988). While we agree that in this case the victim's confinement was not slight or inconsequential due to its duration, this satisfies only one aspect of the Faison test.
Based on the facts of this case, we must conclude that the victim's confinement in her apartment was incidental to the sexual battery. The supreme court has held that because kidnapping must involve a confinement that is not slight, inconsequential, and merely incidental to another crime, "there can be no kidnapping where the only confinement involved is the sort that, though not necessary to the underlying felony, is likely to naturally accompany it." Berry v. State, 668 So.2d 967, 969 (Fla. 1996). In Mobley, for example, inmates attempted a jailbreak and took captive two guards and a visiting attorney. 409 So.2d at 1032. The supreme court held that the "confinement was not incidental to the attempted escape once [the inmates] began using them as hostages and threatening physical harm." Id. at 1037. Here, the State refers to the victim as a hostage, but there is no support for such a characterization. See Mobley, 409 So.2d at 1036 n. 11 ("The term hostage implies confining a person with the intent to hold that person as security for the performance or forbearance of some act by a third person.").
In Ferguson, 533 So.2d at 764, the victims were moved from inside a restaurant to a restroom located outside in the rear of the building; the supreme court held that this was neither incidental to nor inherent in the nature of the robbery "because the robbery could have been committed on the spot without any movement whatsoever." See also Faison, 426 So.2d at 966 (adopting the Third District's conclusion that the movements of the victims were effected by substantial force and violence and therefore not incidental to the sexual batteries, and the movements "were not inherent or necessarily required in the commission of the sexual batteries, which could have been accomplished on the spot without any asportation whatever"). Here, on the other hand, Sanders obviously could not have accomplished the sexual battery without the victim's presence. In other words, the victim's confinement was the sort that, though not necessary to the underlying felony, was likely to naturally accompany it. See Berry, 668 So.2d at 969.
The State also argues that Sanders' kidnapping conviction is supported by the victim's brief confinement in the bathroom. Based on the evidence at trial, it is doubtful that the victim was ever "confined" in the bathroom. Rather, Sanders allowed the victim to go to the bathroom, then he closed but did not lock the door. Be that as it may, the supreme court has explained the difference between the sorts of confinement that are, and are not, incidental to an underlying forcible crime:
[I]f the robbers had moved the victims to a different room in the apartment, closed the door, and ordered them not to come out, the kidnapping conviction *275 could not stand. . . . [A]ny confinement accompanying the robbery would cease naturally with the robbery. By contrast, in this case the robbers left the scene of the robbery without untying the victims, thereby leaving them both in a precarious and vulnerable state for a period beyond the robbery. Like the situation where the victim of a forcible felony is barricaded or locked in a room or closet, the confinement continued even after the robbery had ceased. This is not the sort of confinement that is incidental to robbery.
Berry, 668 So.2d at 969. Here, the victim's confinement in the bathroom ceased once Sanders left the apartment, and the victim was not left in a precarious and vulnerable state. Thus, again, if this was truly a confinement, it was the sort that was incidental to the other crime.
Finally, under the third prong of Faison, we see no evidence to show that the victim's confinement had any significance independent of the other crimes. Nothing about the duration of the confinement made it substantially easier for Sanders to commit the sexual battery; rather, it probably increased the risk of detection. By the time Sanders left the victim's apartment, the day was beginning and he had lost the opportunity to escape under cover of darkness.
Further, the supreme court has held that "[t]he determination of whether the confinement makes the other crime substantially easier of commission or substantially lessens the risk of detection does not depend upon the accomplishment of its purpose. The question is whether the initial confinement was intended to further either of these objectives." Ferguson, 533 So.2d at 764. There was no evidence that Sanders confined the victim to make the crimes easier to commit or to escape detection.
In sum, the evidence of kidnapping in this case failed the Faison test. Therefore, we are legally obliged to reverse Sanders' conviction for kidnapping. But the Faison test does not apply to false imprisonment. See State v. Smith, 840 So.2d 987 (Fla.2003). Accordingly, we remand for the trial court to enter judgment for the lesser offense of false imprisonment, see § 924.34, Fla. Stat. (2001), and to resentence Sanders. At that time, Sanders may raise his claim of scoresheet error.
Affirmed in part, reversed in part, and remanded.
CASANUEVA and KELLY, JJ., Concur.